COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Chaney and Callins
Argued at Alexandria, Virginia

WILLIAM V. DAVIS, ET AL.

OPINION BY
v.      Record No. 1124-24-4          JUDGE VERNIDA R. CHANEY
MARCH 10, 2026

JUDITH CHRISTY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Heba K. Carter (General Counsel, P.C., on briefs), for appellants.

Edward P. Trivette (Kalbaugh, Pfund & Messersmith, P.C., on brief),
for appellee.

Jessica X. Tong, John Marshall Fellow (Jason S. Miyares,[1]
Attorney General; Erika L. Maley, Solicitor General; Kevin M.
Gallagher, Principal Deputy Solicitor General; Graham K. Bryant,[2]
Deputy Solicitor General; Rick W. Eberstadt, Deputy Solicitor
General, on brief), for intervenor Commonwealth of Virginia.

This appeal arises from a years-long dispute among neighbors that began with William

and Janette Davis's complaints about dog-walking etiquette in their neighborhood. Following a

trial, the jury returned a verdict in favor of Judith Christy on the Davises' claims for defamation

and malicious prosecution, as well as on Christy's counterclaims for defamation and civil

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] On January 21, 2026, Solicitor General Tillman J. Breckenridge and Assistant Solicitor General Mikaela A. Phillips entered a notice of appearance as counsel for intervenor, the Commonwealth of Virginia. On January 22, 2026, Graham K. Bryant moved for leave to withdraw as counsel and substitute as counsel Solicitor General Tillman J. Breckenridge.

In response to the motion and notice of appearance, this Court formally takes notice of Solicitor General Tillman J. Breckenridge and Assistant Solicitor General Mikaela A. Phillips as counsel for the Commonwealth.

stalking. On appeal, the Davises argue that the trial court erred in its rulings on spoliation of evidence, jury instructions, and damages.

For the reasons stated below, this Court affirms the trial court's judgment. Additionally, we conclude that Code § 8.01-379.2:1(B) permits adverse-inference instructions only upon a finding of reckless or intentional spoliation—a threshold unmet here—and that the trial court's limited curative remedy was no greater than necessary to cure the prejudice.

BACKGROUND[3]

The Davises purchased a house in Fairfax County in 2010, in the same neighborhood where Christy lived. The Davises renovated their property over the years and, in 2015, installed numerous security cameras around the exterior of their home. Around that time, they observed conduct by neighborhood dog owners they considered disrespectful. The Davises believed that the dog owners were deliberately targeting their property and damaging their landscaping because the Davises had removed several trees from their yard.

The Davises created a document that included photographs of adults and children walking their dogs on or near the Davises' property. Alongside the photographs were names, addresses, and descriptions of the conduct the Davises considered disrespectful, including trespassing and allowing dogs to relieve themselves on the public sidewalk or on the grass strip between the sidewalk and curb. The Davises shared the document with three people, one of whom distributed it more widely.

The Davises raised their concerns with the neighborhood association (HOA) in early 2016. After the April 2016 HOA meeting, Christy agreed to send an email about dog etiquette to

---

[3] On appeal from a jury verdict, the Court views the evidence in the light most favorable to the prevailing party below, which in this case was Christy. *Al-Saray v. Furr*, 304 Va. 19, 28 (2025) (quoting *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021)).

the neighborhood email list on behalf of the Davises.[4]  After Christy did so, the Davises sent a follow-up email thanking her and further detailing their complaints.

Up to that point, the Davises' relationship with Christy had been generally positive.  But on May 31, 2016, the Davises' cameras recorded Christy and four others walking their dogs together past the Davises' property.  The Davises were not home at the time but later viewed the footage.  The group did not trespass on the Davises' property.  One group member waved at one of the Davises' cameras after another member pointed it out.  Janette Davis testified that the group, which she described as "like a mob," "made [the Davises] very nervous" and "scared for [their] safety."  According to Janette, the Davises were concerned that Christy "was going to elevate her behavior" given her "sudden joining [of] this aggressive group of people."  According to Christy, the dog owners had been coincidentally walking their dogs in the neighborhood at the same time and spontaneously decided to walk together.

The next day, the Davises sent Christy a letter threatening to press charges if she or her dog trespassed on their property.  After speaking with the police about what she perceived as harassment, Christy sent a cease-and-desist letter back to the Davises.

The relationship between Christy and the Davises continued to deteriorate.  Christy testified that the Davises often followed her in their cars and screamed at her.  Sometimes when she walked past their property with her dog, they screamed at her from their window or played a laugh track, music, or police sirens.  They called her a "schizophrenic circus freak" and a "crazy person" and told her to "get back on [her] meds."  On one occasion, when Christy was driving behind the Davises, William Davis slammed on the brakes without reason, almost causing an accident.

---

[4] The Davises first met Christy in 2015 when she showed them the garage doors she had recently installed.

- 3 -

Christy regularly complained to the police about the Davises and helped organize a meeting with the Commonwealth's attorney and other neighbors whom the Davises allegedly harassed. When Christy complained to the police that the Davises recorded her during a yard sale in her driveway, the police responded that public recording was legal and recommended that she record the Davises to deter their frightening behavior. Christy did so, generally recording the Davises' home on her cell phone when walking her dog, usually from the street or a grassy area across the street from their home.

The tension between the parties continued for years. On one occasion, a law firm employed by the Davises sent Christy a notice warning her of the criminal penalties for trespass and for failing to pick up after her dog. On another occasion, the Davises circulated a letter to 250 homes in the neighborhood complaining about Christy's recordings and "harassment." The letter included still shots of recordings the Davises had taken of Christy, primarily from their security cameras.

Christy occasionally posted about the Davises' actions on Nextdoor.[5] Christy did not name the Davises because they were "so litigious," but the context of the posts made it clear that she was referring to the Davises. She also regularly texted with neighbors who had similar disputes with the Davises.

Janette Davis also posted about Christy on Nextdoor. She accused Christy of using her phone to record "into [the Davises'] windows, including bedrooms," and warned others of Christy's "very disturbing" and "demented" behavior. She attached photographs of Christy to her post.

---

[5] Christy testified that her "understanding of . . . Next[d]oor" was that it was "Facebook for neighborhoods. So it's for committees to talk. People within a community to talk to each other or beyond communities to talk to each other."

- 4 -

In March 2018, Christy swore out a criminal complaint against the Davises, claiming that they had harassed and stalked her since May 2016 by following her in their cars, threatening her, and playing loud music when she walked by their house. The Davises were arrested and tried for criminal stalking but were ultimately acquitted.

The Davises sued Christy in November 2018, raising claims of malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, nuisance, and civil stalking.[6] Christy counterclaimed for defamation, insulting words, and civil stalking. After a nine-day jury trial that began in January 2024, the jury found for Christy on the Davises' claims. The jury also found for Christy on her counterclaims of defamation and stalking. The jury awarded Christy $100,000 in compensatory damages and $200,000 in punitive damages on her defamation claim, which the trial court remitted by two-thirds. The jury also awarded her $100,000 in compensatory damages and $400,000 in punitive damages on her stalking claim, which the trial court remitted by three-fourths. The total damages after remittitur were $200,000.

The Davises moved for judgment notwithstanding the verdict. The trial court denied the motion and entered final judgment in Christy's favor.

---

[6] In March and June 2019, the trial court sustained Christy's demurrers in part, dismissing the Davises' claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and nuisance.

ANALYSIS[7]

## I. Stalking Jury Instruction

"A victim has a civil cause of action against an individual who engaged in conduct that is prohibited under [Code] § 18.2-60.3." Code § 8.01-42.3(A). A person violates Code § 18.2-60.3 when, "on more than one occasion, [that person] engages in conduct . . . directed at another person with the intent to place, or when he [or she] knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury[.]" Code § 18.2-60.3(A).

The Davises' first assignment of error states that "[t]he trial court erred when it failed to include the proper mens rea of recklessness in the jury instruction for [Christy's] civil stalking claim." The jury instruction defining stalking largely tracked the definition in Code § 18.2-60.3. The Davises did not object contemporaneously to that instruction. After the trial concluded, they filed a motion for judgment notwithstanding the verdict, arguing for the first time that Code §§ 8.01-42.3 and 18.2-60.3 are unconstitutional in light of the Supreme Court of the United

---

[7] The Davises also challenge a brief comment the trial court made during Christy's case-in-chief regarding the pace of the trial. The court's remark was made out of concern about the jury staying late, and while noting the delay was attributable to the plaintiffs, the court requested that Christy conclude her case. Although the Davises objected, they did not request a curative instruction, mistrial, or other remedy, which raises a preservation issue. *See* Rule 5A:18. Assuming without deciding that the issue is preserved, a trial court's scheduling-related comment directed to counsel, rather than to the evidence or witness credibility, does not constitute reversible error absent a showing of prejudice. *Cf. Slade v. Commonwealth*, 155 Va. 1099, 1109 (1931) ("If the language of the judge had any effect, it appears to us that it rather constituted a reprimand of counsel for his manner of cross-examining the witness and we are unable to see how that in any way prejudiced the accused."). The record also reflects that the court took steps the next morning to address any possible prejudice by commending the Davises' counsel before the jury for their diligent efforts in keeping the trial on schedule. Thus, there was no error in the trial court's remarks.

States's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023).[8] This Court notified the Attorney General of the Davises' constitutional claim per Rule 3:14A and later granted the Attorney General's motion to intervene. The Commonwealth and Christy both argue that the Davises failed to preserve their constitutional challenge by not objecting to the jury instruction before it was given.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The rule's purpose is to afford "the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals *and retrials*." *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (emphasis added) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "This rule 'applies to bar even constitutional claims.'" *Flowers v. Commonwealth*, 84 Va. App. 143, 157 (2025) (quoting *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023)).

"[W]hen an issue has been submitted to a jury under instructions given without objection, such assent constitutes a waiver of any contention that the trial court erred in failing to rule as a matter of law on the issue." *Boyd v. Weisberg*, 75 Va. App. 725, 738-39 (2022) (quoting *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 137-38 (1999)). That is true even if the instruction

---

[8] In *Counterman*, the Supreme Court of the United States held that, under the First and Fourteenth Amendments to the United States Constitution, a statement can be punished as a "true threat" only where the speaker "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *See Counterman*, 600 U.S. at 69.

"imposes 'an inappropriate standard.'" *Smith v. Commonwealth*, 296 Va. 450, 462 (2018) (quoting *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 136 (1992)).

Here, the Davises failed to object contemporaneously to the jury instruction they now challenge. Although they later challenged Code §§ 8.01-42.3 and 18.2-60.3 as unconstitutional in their motion for judgment notwithstanding the verdict, they did not present that argument to the trial court as a challenge to the stalking instruction actually given. Even if they had, the challenge would have been too late. *See Smith*, 296 Va. at 462 (holding that a challenge to a jury instruction in a motion to set aside the verdict "came too late"); *Spitzli v. Minson*, 231 Va. 12, 19 (1986) (holding that a motion to set aside the verdict "does not save [a party] from his failure to object to the instructions").

Moreover, "[o]nly assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1). "[W]e do not consider issues touched upon by the appellant[s'] argument but not encompassed by [their] assignment of error." *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017). The Davises' assignment of error challenges only the accuracy of the stalking jury instruction. That assignment of error does not encompass their separate argument that the relevant statutes are unconstitutional. Consequently, we do not consider their constitutional challenge.[9]

---

[9] The Davises ask this Court to apply the ends of justice exception. But "[t]he very fact that [a party] 'invited the error' by agreeing to the jury instructions . . . 'renders Rule 5A:18's ends of justice exception inapplicable.'" *Boyd*, 75 Va. App. at 739 (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010)). "'It can hardly be a 'grave injustice' . . . for a trial court to give an agreed upon jury instruction." *Id.* (alteration in original) (quoting *Alford*, 56 Va. App. at 709).

In urging this Court to apply the ends of justice exception, the Davises rely on a principle sometimes applied in criminal cases: "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." *Johnson v. Commonwealth*, 20 Va. App. 547, 553-54 (1995) (quoting *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991)). But this Court has held that "the 'essential rights' implicated in the criminal context are not at issue in" a purely civil matter. *Boyd*, 75 Va. App. at 739. In *Boyd*, this Court held that Rule 5A:18 precluded review where the appellant had

## II. Spoliation

The Davises next contend that the trial court abused its discretion in fashioning a remedy for Christy's spoliation of text messages and videos. A "potential litigant has a duty to preserve evidence that may be relevant to reasonably foreseeable litigation." Code § 8.01-379.2:1(A). If the trial court finds that "evidence that should have been preserved in the anticipation . . . of litigation is lost because a party failed to take reasonable steps to preserve it," or is otherwise disposed of and "cannot be restored or replaced through additional discovery," and the court further finds that the spoliation prejudiced another party, the court "may order measures no greater than necessary to cure the prejudice[.]" Code § 8.01-379.2:1(B)(i). Further, "only" if the court finds that the spoliating party "acted recklessly or with the intent to deprive another party of the evidence's use in the litigation," the court "may (a) presume that the evidence was unfavorable to the [spoliating] party, (b) instruct the jury that it may or shall presume that the evidence was unfavorable to the party, or (c) dismiss the action or enter a default judgment." Code § 8.01-379.2:1(B)(ii).

During discovery, Christy produced no text messages and only three videos. She replaced her cell phone in 2018 and again in 2021, and did not keep her prior phones or save most of the files on them. At trial, Christy testified that she "did not know how" to back up the videos and photographs on her phone and that she deleted videos from her phone because she "d[id not] have that much space on [her] phone." She also testified that she deleted videos in

---

"fail[ed] to object until long after the jury was released and the judgment was entered," notwithstanding the appellant's invocation of the ends of justice exception. *Id.* at 739-40. The same result is warranted here. Applying the ends of justice exception in these circumstances would effectively nullify Rule 5A:18's requirement that litigants object to jury instructions before they are given and would permit a party to withhold a constitutional theory at trial while reserving it for appeal.

which there was no interaction with the Davises and sometimes deleted text messages "on purpose or accidentally that [she] d[id not] need anymore."

The Davises moved for sanctions against Christy for spoliation of evidence. The trial court found that Christy should have anticipated litigation as early as June 2016 and "should have preserved the text messages in anticipation of litigation." The court did not find, however, that Christy acted recklessly or with the intent to deprive the Davises of the evidence. In the trial court's view, the Davises were prejudiced by the loss of the text messages.[10] But the court noted that the Davises had obtained many of those messages from other sources and that their security cameras would have captured the videos Christy had recorded on her phone, substantially lessening the prejudice.

Turning to the remedy, the court explained that under Code § 8.01-379.2:1, it could not "do anything greater than necessary to cure the prejudice," which the court noted was "much more limiting" than if the court found that Christy had acted recklessly or with the intent to deprive the Davises of the photographs and videos. Had the court made those "other findings," it could have "instruct[ed] the jury that it may or shall presume that evidence was unfavorable to" Christy. The court concluded that, absent such findings, an adverse inference jury instruction would be greater than necessary to cure the spoliation. The court permitted the Davises to emphasize during the closing argument Christy's admission that she had failed to preserve

_____

[10] The court previously had excluded some communications due to a lack of foundation after Christy testified that she did not remember those messages. In ruling on the spoliation motion, the court found that the Davises were prejudiced by their inability to show that the excluded messages had been located on Christy's phones. In other words, "the evidence that can't be replaced" were "the admissions" by Christy that the communications were on her phone. The court cautioned, however, "[t]hat doesn't mean that the documents would have been admitted in court. Because the consistent problem was a foundational problem, where people were saying they didn't have a memory of the conversation."

evidence.[11] The court also crafted and gave the following curative instruction: "All of the text messages in evidence that the Davis[es] introduced in trial are derived from [third] parties and not Ms. Christy."

The Davises assign error to the trial court's ruling. Resolving this issue requires interpreting Code § 8.01-379.2:1(B). "When this Court is asked to interpret a statute, our task 'is to ascertain and give effect to legislative intent, as expressed by the language used in the statute.'" *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 676 (2024) (quoting *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 477 (2023)). It is a "fundamental rule" of statutory interpretation that courts must strive to "giv[e] to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense." *Wills v. Wills*, 72 Va. App. 743, 755 (2021) (quoting *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc), *aff'd*, 273 Va. 410 (2007)). "When the language of a statute is unambiguous, we are bound by its plain meaning." *Norfolk Dep't of Hum. Servs.*, 81 Va. App. at 676 (quoting *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020)). Although appellate courts review issues of statutory interpretation de novo, the trial court's underlying factual determinations "are entitled to great deference and will be overturned only for an abuse of discretion[.]" *Conley v. Bonasera*, 72 Va. App. 337, 346 (2020).

Code § 8.01-379.2:1(B) provides:

> If evidence that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, or is otherwise disposed of, altered, concealed, destroyed, or not preserved, and it cannot be restored or replaced through additional discovery, the court (i) upon finding

---

[11] At closing argument, the Davises' counsel reminded the jury that Christy had "deleted text messages and videos" and asked the jury, "[w]hat did she not want you to see? What did she not want you to hear?" Counsel further told the jury that Christy "did not turn over a single text message" and again asked what Christy was "hiding."

prejudice to another party from such loss, disposal, alteration, concealment, or destruction of the evidence, may order measures no greater than necessary to cure the prejudice, or (ii) only upon finding that the party acted recklessly or with the intent to deprive another party of the evidence's use in the litigation, may (a) presume that the evidence was unfavorable to the party, (b) instruct the jury that it may or shall presume that the evidence was unfavorable to the party, or (c) dismiss the action or enter a default judgment.

This statute has two subparts that address distinct scenarios. Under subsection (i), if the trial court finds prejudicial spoliation, it "may order measures no greater than necessary to cure the prejudice." Code § 8.01-379.2:1(B)(i). Under subsection (ii), "only" if the court finds that the spoliating party acted recklessly or with the intent to deprive the other side of the evidence, the court "may" choose between three statutorily prescribed remedies.[12] Read as a whole, subsection (B) thus creates a two-step framework: the trial court must first determine whether spoliation occurred and whether it prejudiced another party, and then select a remedy that fits both the degree of culpability and the extent of prejudice. In cases of negligent spoliation, the statute not only authorizes but also requires restraint, permitting "measures no greater than necessary to cure the prejudice" while reserving adverse-inference and terminating sanctions for reckless or intentional misconduct. Code § 8.01-379.2:1(B)(i)-(ii).

We cannot ignore the General Assembly's use of "only" in subsection (ii). *Wills*, 72 Va. App. at 755 (recognizing that courts must construe statutes to give "every word . . . its due effect and meaning" (quoting *Epps*, 47 Va. App. at 714)). Through the use of "only," the General Assembly limited the instances in which a court may provide an adverse inference jury

---

[12] The first two allow the court to "presume that the evidence was unfavorable to the party" and to "instruct the jury that it may or shall presume that the evidence was unfavorable to the party." Code § 8.01-379.2:1(B)(ii). The third remedy allows the court to "dismiss the action or enter a default judgment," a most severe penalty, as it would terminate the action. *Id.*

instruction.[13]  By its plain language, Code § 8.01-379.2:1(B) restricts a court's discretion to give an adverse inference instruction to situations where it has found intentional or reckless spoliation of evidence.

"A person acts recklessly, in the most common formulation, when [s]he 'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another.'" *Counterman*, 600 U.S. at 79 (second and third alterations in original) (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)).  Here, the trial court found that Christy did not act recklessly or with the intent to deprive the Davises of the evidence.  That factual finding was not plainly wrong or without evidence to support it.  Christy, who was not an attorney, explained that she did not know how to back up certain files, lacked sufficient space on her phone to save everything, and did not understand the need to keep certain files.  The trial court could credit those explanations and conclude that by deleting photographs and videos, Christy did not consciously disregard a known substantial risk that doing so would cause the Davises prejudice.[14]

---

[13] The General Assembly passed Code § 8.01-379.2:1 in 2019, after the Supreme Court decided *Emerald Point, LLC v. Hawkins*, 294 Va. 544 (2017), which held that "the evidence must support a finding of intentional loss or destruction of evidence in order to prevent its use in litigation before the court may permit the [adverse] spoliation inference." *Id.* at 559; *see* 2019 Va. Acts ch. 732 (enacting Code § 8.01-379.2:1).  "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 376 (2018) (quoting *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 181 (1965)).  Code § 8.01-379.2:1 modified *Emerald Point*'s intentionality requirement by specifying a mens rea of recklessness.

[14] The Davises point to Christy's testimony that she deleted text messages "on purpose or accidentally."  But the intent at issue in Code § 8.01-379.2:1(B) is a "finding that the party acted recklessly or with the intent to deprive another party of the evidence's use in the litigation," not simply the intent to discard the evidence.  The trial court found that Christy did not act recklessly and lacked the intent to deprive, and the record contains sufficient evidence supporting that conclusion.

Without a finding that Christy acted recklessly or with the intent to deprive the Davises of evidence, the trial court could not grant the request for an adverse inference instruction. Yet the statute provides that it "may order measures no greater than necessary to cure the prejudice." Code § 8.01-379.2:1(B). The use of "may" grants the trial court discretion to craft a measure calculated to address the particular prejudice that has occurred. *See Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (enumerating options available to the trial court for failing "to obey an order to provide or permit discovery" (quoting Rule 4:12(b)(2))). When a court has discretion, it "has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 93 (2021) (quoting *Landrum*, 282 Va. at 352). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

The trial court found that the Davises were prejudiced by the missing text messages, but that the prejudice was limited because they were able to substantially recreate the missing evidence from other sources, and Christy admitted to deleting the communications during her testimony. The court determined that the measure to cure that prejudice would be to instruct the jury that the messages in evidence derived from other sources and to allow the Davises to discuss that fact during closing argument. The Davises took advantage of that remedy by suggesting to the jury that Christy was hiding unfavorable evidence. The statute requires the trial court to exercise restraint and not order measures greater than necessary.

This Court concludes that the trial court did so here, and its remedy fell within the range of reasonableness.[15] Although the Davises could not elicit admissions from Christy that

---

[15] The Davises contend that the jury instruction, which referenced only messages "in evidence," did not cure the prejudice the trial court found, which was a lack of admissions that could have resulted in additional messages being admitted. But the trial court also stated that

- 14 -

particular messages resided on her phone, many of the communications themselves were available from other sources. The Davises' own security cameras captured much of the same conduct that Christy had recorded. In light of that evidentiary overlap, the court permissibly viewed the prejudice as relating primarily to the source of the messages rather than to their substantive content. We find that the court's chosen remedy—a brief factual clarification and reliance on counsel's arguments—fell well within the range of reasonableness. The court's instruction that "All of the text messages in evidence that the Davis[es] introduced in trial are derived from [third] parties and not Ms. Christy" (Jury Instr. I; R. 1935) accurately described an undisputed fact and appropriately addressed the limited prejudice the court identified. The trial court, therefore, did not err by issuing this instruction.

## III. The Davises' Damages

The Davises next argue that the trial court erred in excluding evidence regarding their damages. At trial, the Davises tried to introduce invoices showing the attorney fees they paid to defend against the criminal stalking charge. Christy objected on hearsay grounds, and the court sustained the objection. Janette Davis then testified in detail about each invoice and the amount the Davises paid. She testified that they spent around $36,000 defending themselves in the criminal stalking case. William Davis similarly testified that they spent $36,397. Following the testimony, the Davises again asked the trial court to admit the invoices. After hearing further argument, the court ruled that it was "not going to admit those documents."

The Davises also testified about renovations they had made to their property and the amount they spent. After William Davis's testimony about the renovations, the Davises tried to submit into evidence a spreadsheet that Mr. Davis had prepared for litigation detailing each

obtaining such admissions "doesn't mean that the documents would have been admitted in court," and therefore that no further measures were necessary.

renovation and its cost. On Christy's objection, the trial court excluded the spreadsheet as inaccurately summarizing William's testimony.

The Davises testified that they bought the house for $805,000 in 2010 and sold it for $1,350,000 in April 2021 because "it was no longer tolerable" to live there. They tried to submit a public listing of the property, but the trial court excluded it as irrelevant.

On appeal, the Davises assert that the trial court erred by excluding the attorney's invoices, the renovation spreadsheet, and the public listing. The trial court declined to find that these were admissible as records of regularly conducted activity, pursuant to Virginia Rule of Evidence 2:803(6), or in aid of Mr. Davis's lay opinion testimony as to the value of their home, pursuant to Virginia Rule of Evidence 2:701. Even if we assume the trial court erred, any error was harmless.

The evidence that the Davises claim was improperly excluded pertained solely to the quantum of damages to which they would have been entitled had they prevailed. But they did not prevail. The jury returned a verdict in Christy's favor on each of the Davises' claims. The record clearly establishes that the jury addressed the Davises' liability before turning to Christy's quantum of damages.

The jury instructions and verdict forms show that this is what the jury did.[16] The court instructed that "If you find your verdict in favor of Mr. or Mrs. Davis, then in determining the amount of damages to which they are entitled, you may take into consideration all of the circumstances surrounding the statement." (Jury Instr. 23B; R. 1950). Likewise, the general plaintiff damages instruction provided for consideration of specific factors "If you find your

---

[16] *Compare* R. 1986-93 (jury findings against the Davises on defamation and malicious prosecution, and therefore not fixing damages), *with* R. 1995-98, 2002 (jury finding for Christy on defamation, fixing damages). *See* R. 1950, 1960, 1971-72, 1978, 1984 (jury instructions for "actual" and "compensatory" damages, predicating each on a finding of liability).

verdict for the plaintiff, then in determining the damages to which the plaintiff is entitled" you are to consider specified factors. (Jury Instr. 24A; R. 1960). As to Christy's counterclaims, the court instructed that "If you find your verdict in favor of Ms. Christy, then in determining the amount of damages to which she is entitled, you may take into consideration" all relevant circumstances. (Jury Instr. 46B; R. 1978). For civil stalking, the jury was told: "If you find that Mr. and Mrs. Davis engaged in stalking of Ms. Christy, then Ms. Christy may be awarded compensatory damages." (Jury Instr. 42B; R. 1984). The verdict forms for Christy's defamation and civil-stalking counterclaims then asked, only "If you have answered yes to all of the above" liability questions, "What is the amount of [Christy's] damages?" (Counter-Defamation Verdict Form; R. 1998; Counter-Civil Stalking Verdict Form; R. 2002).

Therefore, we conclude that the jury decided the Davises' liability before it ever considered any damages evidence. How much the Davises spent on legal representation or home renovations could not have affected the jury's finding that Christy did not defame or maliciously prosecute them and was thus not liable to them for any damages. That conclusion reflects the settled principle that liability and damages are distinct inquiries and that a jury must first find liability before assessing the amount of any recovery. *See Fayed v. W. H. Harris Grocery Co.*, 158 Va. 568, 570 (1932) (requiring value to be ascertained before jury could assess damages); *Cosby v. Clem*, 290 Va. 1, 11 (2015) (describing liability determination preceding damages); *Castle v. Lester*, 272 Va. 591, 605 (2006) (approving instruction where liability was stipulated and only damages went to jury); *Claycomb v. Didawick*, 256 Va. 332, 335 (1998) (noting sequence of liability evidence before damages evidence); *White Consol. Indus., Inc. v. Swiney*, 237 Va. 23, 27 (1989) (addressing liability issues before damages); *Peck Iron & Metal Co. v. Seaboard A.L.R. Co.*, 200 Va. 698, 704-05 (1959) (treating exclusion of damages-measure evidence as harmless where jury disallowed claim for any damages).

## IV. Christy's Damages

The Davises also challenge the sufficiency of the evidence supporting the jury's award of compensatory damages to Christy. A party who comes before an appellate court with a jury verdict approved by the trial court "occupies the most favored position known to the law." *Al-Saray v. Furr*, 304 Va. 19, 27-28 (2025) (quoting *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021)). Generally, an appellate court will not set aside a "judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Ellis*, 299 Va. at 622). The appellate court must consider the evidence "taken in the light most favorable to the" prevailing party. *Id.* (quoting *Ellis*, 299 Va. at 622).

"[A] plaintiff has the burden to establish [her] damages with reasonable certainty[.]" *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 89 (2008). But "[d]amages need not be established with mathematical certainty. Rather, a plaintiff is required only to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained." *Id.* (alteration in original) (quoting *Est. of Taylor v. Flair Prop. Assocs.*, 248 Va. 410, 414 (1994)). The Davises contend that Christy "failed to prove *any* damages with reasonable certainty." (Emphasis added). Accordingly, our analysis "is limited to the narrow issue of whether [Christy's] evidence was sufficient to support the jury's award of any damages." *Ellis*, 299 Va. at 623.

Compensatory damages are "limited to the actual damages proved to have been sustained[.]" *Fleming v. Moore*, 221 Va. 884, 894 (1981). "[B]ut such damages should not necessarily be restricted to out-of-pocket loss." *Id.* Nor are they limited to reputational damage; rather, a plaintiff can "recover compensatory damages upon proof of actual injury, *including* such elements as damage to [her] reputation and standing in the community, embarrassment, humiliation, *and mental suffering*." *Id.* (emphases added); *see also Gov't Micro Res., Inc. v.*

- 18 -

*Jackson*, 271 Va. 29, 47 (2006) (faulting the trial court for granting remittitur without considering "injuries presumed in defamation per se or the evidence regarding the impact of the defamation on [the plaintiff's] *emotional state*, reputation, and employment opportunities, all of which the jury was entitled to consider" (emphasis added)); *Sateren v. Montgomery Ward & Co.*, 234 Va. 303, 305 (1987) (accepting the legal concession in light of *Fleming* that "it is not necessary to show actual out of pocket damage in [a] non libel per se action" and that "a showing of loss of reputation and standing in the community, embarrassment, humiliation, and mental suffering will be sufficient for the award of damages" (alteration in original)). This framework accords with *Ellis*, where the Supreme Court held that "evidence, consisting solely of mental anguish, emotional distress and humiliation, was sufficient to support the jury's award of compensatory damages" on a civil stalking claim. *Ellis*, 299 Va. at 627.

As such, the Davises' argument that Christy failed to prove reputational damage is not persuasive. The tendency of the statements to harm Christy's reputation may affect whether the statements were defamatory, but the Davises do not challenge the jury's defamation liability finding on appeal. Once a statement is deemed defamatory, the plaintiff can recover for mental suffering and other actual injuries proved.[17] *Fleming*, 221 Va. at 894-95; *Sateren*, 234 Va. at 305.

Similarly, a plaintiff may recover damages for mental suffering resulting from civil stalking, even in the absence of monetary damages. *See* Code § 8.01-42.3(A), (B) (providing for "compensatory damages" for conduct prohibited by Code § 18.2-60.3); Code § 18.2-60.3(A) (prohibiting conduct "directed at another person with the intent to place, or when he knows or

---

[17] To the extent the Davises contend otherwise, we note that they agreed to—and even presented alongside their own defamation claims—a jury instruction stating that defamation damages should "fully and fairly compensate" for, among other things, "any insult, . . . including any pain, embarrassment, humiliation, or mental suffering." The Davises do not separately challenge the jury's award of punitive damages.

reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury"); *Ellis*, 299 Va. at 624-27 (rejecting the argument that monetary damages are a necessary predicate for an award of compensatory damages and holding that evidence of "mental anguish, emotional distress and humiliation" was sufficient support for "the jury's award").

Here, Christy offered detailed testimony describing her mental anguish and fear. She testified that the Davises' actions left her "[s]cared, threatened, harassed, [and] attacked." She "was just fearful of living in [her] own house and in the community and being out in public." When she swore out the criminal complaint against the Davises, she provided a written narrative to the magistrate, explaining that the Davises made her "anxious and fearful of bodily harm, even life, and in fear of what they will do next." She described having "trouble sleeping [or] walking alone," "constantly looking over her shoulder," and taking extra precautions when in the neighborhood. That letter also included a bullet-pointed list of ten incidents that Christy had "endured," culminating in the Davises' letter to approximately 250 homes "full of libelous comments" about her, after which her "fear for safety, bodily injury, and life reached a tipping point."[18] The jury could reasonably conclude from this evidence that the Davises' defamation and stalking caused Christy compensable harm.

The jury was not required to allocate each instance of Christy's distress between defamation and stalking with mathematical precision. It was enough that the record, viewed as a whole, provided a concrete narrative of escalating fear, anxiety, and humiliation that the jury

---

[18] In addition to the letter to the magistrate, some of Christy's testimony about her damages came immediately after testifying about the Davises' defamation. Consequently, we reject the Davises' claim that Christy's testimony about her emotional suffering related solely to the stalking, not the defamation.

reasonably could attribute to the Davises' course of conduct and the statements it found actionable. *See Ellis*, 299 Va. at 623-24.

We also reject the Davises' argument that Christy was required to corroborate her "psychiatric and mental conditions" with medical testimony. It is well established in Virginia that "[t]he compensation one is entitled to receive for pain and suffering in a personal injury case cannot be measured with precision and ordinarily is a question of fact to be determined by the composite judgment of the jurors[.]" *Wagnstrom v. Pope*, 207 Va. 761, 764 (1967). Christy's damages were not based on a discrete medical diagnosis: they were based on her general emotional suffering. Christy was allowed to testify about how the Davises' actions made her feel without being required to provide corroborating medical testimony. *See Banks*, 67 Va. App. at 293 (holding that a lay victim-witness's testimony was sufficient to establish fear under Code § 18.2-60.3); *see also id.* at 291 ("The standard for determining fear is 'an objective one.' 'A victim need not specify what particular harm she fears to satisfy' this element." (quoting *Stephens v. Rose*, 288 Va. 150, 157 (2014))). In short, Christy furnished sufficient evidence of emotional suffering to permit the jury to assess her damages, and it was the province of the jury to determine the amount.

CONCLUSION

For these reasons, this Court affirms the trial court's judgment.

*Affirmed.*